## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

UNITED STATES OF AMERICA,

                   Plaintiff,

         v.

UNITED TECHNOLOGIES CORPORATION,

and

RAYTHEON COMPANY,

                   Defendants.

---

## ASSET PRESERVATION AND HOLD SEPARATE STIPULATION AND ORDER

It is hereby stipulated and agreed by and between the undersigned parties, subject to approval and entry by the Court, that:

### I.      DEFINITIONS

As used in this Asset Preservation and Hold Separate Stipulation and Order ("Stipulation and Order"):

A.      "Acquirer" or "Acquirers" means the entity or entities to whom Defendants divest any of the Divestiture Assets.

B.      "Acquirer of the Military Airborne Radios Divestiture Assets" means BAE or another entity to whom Defendants divest the Military Airborne Radios Divestiture Assets.

C.      "Acquirer of the Military GPS Divestiture Assets" means BAE or another entity to whom Defendants divest the GPS Divestiture Assets.

D.      "Acquirer of the Optical Systems Divestiture Assets" means the entity to whom

Defendants divest the Optical Systems Divestiture Assets.

      E.      "Divestiture Assets" means the Military Airborne Radios Divestiture Assets, the Military GPS Divestiture Assets, and the Optical Systems Divestiture Assets.

      F.      "UTC" means Defendant United Technologies Corporation, a Delaware corporation with its headquarters in Farmington, Connecticut, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

      G.      "Raytheon" means Defendant Raytheon Company, a Delaware corporation with its headquarters in Waltham, Massachusetts, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

      H.      "BAE" means BAE Systems, Inc., a Delaware corporation with its headquarters in Arlington, Virginia, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

      I.      "Military Airborne Radios" means radios that enable military aircraft to communicate with other aircraft and with the ground, either as standalone devices or as part of an integrated communication, navigation, and identification suite. "Military Airborne Radios" does not include Cryptographic Modules, identification friend or foe systems, or data links.

      J.      "Cryptographic Modules" means hardware and software for encryption and decryption of radio signals and related application-specific integrated circuits and field-programmable gate arrays for the Military Airborne Radios Business.

K.      "Military Airborne Radios Business" means the business of the design, development, production, and sale of Military Airborne Radios by Raytheon's Tactical Communication Systems division.

L.      "Military Airborne Radios Divestiture Assets" means the Military Airborne Radios Business, including:

1.      All of Defendants' rights, title, and interests in the facilities located at the following addresses:

a.      5001 U.S. 30 Highway, Fort Wayne, Indiana 46818 (the "Fort Wayne Facility");

b.      Office 135 of Building 100 located at the county-owned facility at 7887 Bryan Dairy Road, Largo, Florida 33777;

2.      All tangible assets related to or used in connection with the Military Airborne Radios Business, including but not limited to: all manufacturing equipment, quality assurance equipment, research and development equipment, machine assembly equipment, tooling and fixed assets, personal property, inventory, office furniture, materials, supplies, and other tangible property; all licenses, permits, certifications, and authorizations issued by any governmental organization; all contracts, teaming arrangements, agreements, leases, commitments, certifications, and understandings, including supply agreements; all customer lists, contracts, accounts, and credit records; all repair and performance records; and all other records;

3.      All intangible assets related to or used in connection with the Military Airborne Radios Business, including but not limited to: all patents; licenses and sublicenses; intellectual property; copyrights; trademarks, trade names, service marks, and service names

3

(excluding any trademarks, trade names, service marks, or service names containing the name "Raytheon"); technical information; computer software and related documentation; customer relationships, agreements, and contracts; know-how; trade secrets; drawings; blueprints; designs; design protocols; specifications for materials; specifications for parts and devices; safety procedures for the handling of materials and substances; quality assurance and control procedures; design tools and simulation capability; all manuals and technical information Raytheon provides to its own employees, customers, suppliers, agents, or licensees; and all research data concerning historic and current research and development efforts, including but not limited to designs of experiments and the results of successful and unsuccessful designs and experiments; and

      4.    At the option of the Acquirer of the Military Airborne Radios Divestiture Assets, a worldwide, non-exclusive, royalty-free, irrevocable, paid-up, perpetual license to any intellectual property related to Cryptographic Modules that is held by Raytheon at the time of the filing of the Complaint in this action, or is developed by Raytheon during the term of the supply contract required by Paragraph IV(H) of the proposed Final Judgment, including any extensions of that term approved by the United States;

*Provided, however*, that the assets specified in Paragraphs II(L)(1)-(4) above, do not include (i) the space leased by Raytheon at 1010 Production Road, Fort Wayne, Indiana 46818; (ii) the space leased by Raytheon in Buildings 100, 400 and 600 at the county-owned facility located at 7887 Bryan Dairy Road, Largo, Florida 33777 (other than Office 135 of Building 100); or (iii) intellectual property solely related to Cryptographic Modules, except as set forth in Paragraph II(L)(4).

4

M.      "Military Airborne Radios Personnel" means all full-time, part-time, or contract personnel who are or were, at any time between June 9, 2019 and the date on which the Military Airborne Radios Divestiture Assets are divested, (i) employees of the Military Airborne Radios Business, (ii) employees of Raytheon primarily involved in the design, development, production, and sale of Military Airborne Radios (except for Raytheon employees primarily engaged in human resources, legal, or other general or administrative support functions), or (iii) at the option of the Acquirer of the Military Airborne Radios Divestiture Assets, up to sixteen (16) employees of Raytheon knowledgeable in the design, development, production, and use of Cryptographic Modules, to be selected by the Acquirer of the Military Airborne Radios Divestiture Assets. The United States, in its sole discretion, will resolve any disagreement regarding which employees are Military Airborne Radios Personnel.

N.      "Military Airborne Radios Transition Assets" means those Military Airborne Radios Divestiture Assets required for Defendants to comply with their obligations under the supply contract required by Paragraph IV(H) of the proposed Final Judgment.

O.      "Military GPS Systems" means military receivers and anti-jam products for global positioning satellite systems.

P.      "Military GPS Business" means UTC's business in the design, development, production, and sale of Military GPS Systems.

Q.      "Military GPS Divestiture Assets" means the Military GPS Business, including:

1.      All tangible assets related to or used in connection with the Military GPS Business, including but not limited to: all manufacturing equipment, quality assurance equipment, research and development equipment, machine assembly equipment, tooling and

fixed assets, personal property, inventory, office furniture, materials, supplies, and other tangible property; all licenses, permits, certifications, and authorizations issued by any governmental organization; all contracts, teaming arrangements, agreements, leases, commitments, certifications, and understandings, including supply agreements; all customer lists, contracts, accounts, and credit records; all repair and performance records; and all other records;

2.    All intangible assets related to or used in connection with the Military GPS Business, including but not limited to: all patents; licenses and sublicenses; intellectual property; copyrights; trademarks, trade names, service marks, and service names (excluding any trademarks, trade names, service marks, or service names containing the name "United Technologies," "Rockwell," "Collins," "UTC," or "UTX"); technical information; computer software and related documentation; customer relationships, agreements, and contracts; know-how; trade secrets; drawings; blueprints; designs; design protocols; specifications for materials; specifications for parts and devices; safety procedures for the handling of materials and substances; quality assurance and control procedures; design tools and simulation capability; all manuals and technical information UTC provides to its own employees, customers, suppliers, agents, or licensees; and all research data concerning historic and current research and development efforts, including but not limited to designs of experiments and the results of successful and unsuccessful designs and experiments;

*Provided, however*, the assets specified in Paragraphs II(Q)(1)-(2) above do not include (i) the facility located at 855 35th Street NE, Cedar Rapids, Iowa 52498 (the "Cedar Rapids Facility") or (ii) the facility located at 2855 Heartland Drive, Coralville, Iowa 52241 (the "Coralville Facility").

R.      "Military GPS Personnel" means all full-time, part-time, or contract personnel who are or were, at any time between June 9, 2019 and the date on which the Military GPS Divestiture Assets are divested, (i) employees of the Military GPS Business, or (ii) employees of UTC primarily involved in the design, development, production, and sale of Military GPS Systems (except for UTC employees primarily engaged in human resources, legal, or other general or administrative support functions). The United States, in its sole discretion, will resolve any disagreement regarding which employees are Military GPS Personnel.

S.      "Military GPS Transition Assets" means those Military GPS Divestiture Assets required for Defendants to comply with their obligations under the supply contract required by Paragraph V(H) of the proposed Final Judgment.

T.      "Optical Systems" means electro-optical/infrared systems for national security space missions and defense laser warning survivability subsystems.

U.      "Optical Systems Business" means UTC's business in the design, development, production, and sale of Optical Systems.

V.      "Optical Systems Divestiture Assets" means the Optical Systems Business, including:

1.      All of Defendants' rights, title, and interests in the facility located at 100 Wooster Heights, Danbury, Connecticut 06810;

2.      All tangible assets related to or used in connection with the Optical Systems Business, including but not limited to: all manufacturing equipment, quality assurance equipment, research and development equipment, machine assembly equipment, tooling and fixed assets, personal property, inventory, office furniture, materials, supplies, and other tangible

property; all licenses, permits, certifications, and authorizations issued by any governmental organization; all contracts, teaming arrangements, agreements, leases, commitments, certifications, and understandings, including supply agreements; all customer lists, contracts, accounts, and credit records; all repair and performance records; and all other records; and

       3.     All intangible assets related to or used in connection with the Optical Systems Business, including but not limited to: all patents; licenses and sublicenses; intellectual property; copyrights; trademarks, trade names, service marks, and service names (excluding any trademarks, trade names, service marks, or service names containing the name "United Technologies," "Rockwell," "Collins," "UTC," or "UTX"); technical information; computer software and related documentation; customer relationships, agreements, and contracts; know-how; trade secrets; drawings; blueprints; designs; design protocols; specifications for materials; specifications for parts and devices; safety procedures for the handling of materials and substances; quality assurance and control procedures; design tools and simulation capability; all manuals and technical information UTC provides to its own employees, customers, suppliers, agents, or licensees; and all research data concerning historic and current research and development efforts, including but not limited to designs of experiments and the results of successful and unsuccessful designs and experiments.

       W.     "Optical Systems Personnel" means all full-time, part-time, or contract personnel who are or were, at any time between June 9, 2019 and the date on which the Optical Systems Divestiture Assets are divested, (i) employees of the Optical Systems Business, or (ii) employees of UTC involved in the design, development, production, and sale of Optical Systems (except for UTC employees primarily engaged in human resources, legal, or other general or administrative

support functions).  The United States, in its sole discretion, will resolve any disagreement regarding which employees are Optical Systems Personnel.

X.     "Relevant Personnel" means the Military Airborne Radios Personnel, the Military GPS Personnel, and the Optical Systems Personnel.

Y.     The "Transaction" means the proposed merger between UTC and Raytheon.

## II.     <u>OBJECTIVES</u>

The proposed Final Judgment filed in this case is meant to ensure Defendants' prompt divestiture of the Divestiture Assets for the purpose of establishing one or more viable competitors in the design, development, production, and sale of Military Airborne Radios, Military GPS Systems, and Optical Systems in order to remedy the effects that the United States alleges would otherwise result from the merger of UTC and Raytheon.  This Stipulation and Order ensures, prior to divestiture, that (1) the Military Airborne Radios Divestiture Assets and the Military GPS Divestiture Assets remain economically viable, competitive, and saleable, and that Defendants will preserve and maintain the Military Airborne Radios Divestiture Assets and the Military GPS Divestiture Assets, and (2) the Optical Systems Business will remain an independent, economically viable, and ongoing business concern that will remain uninfluenced by Defendants, and that the level of competition for the design, development, production, and sale of Optical Systems that existed between Defendants prior to the Transaction is maintained during the pendency of the ordered divestiture of the Optical Systems Divestiture Assets.

### III.     JURISDICTION AND VENUE

The Court has jurisdiction over the subject matter of this action and over each of the parties hereto, and venue for this action is proper in the United States District Court for the District of Columbia.   Defendants waive service of summons of the Complaint.

### IV.     COMPLIANCE WITH AND ENTRY OF FINAL JUDGMENT

A.      The parties stipulate that a Final Judgment in the form attached hereto as Exhibit A may be filed with and entered by the Court, upon the motion of any party or upon the Court's own motion, at any time after compliance with the requirements of the Antitrust Procedures and Penalties Act (15 U.S.C. § 16) ("APPA"), and without further notice to any party or other proceedings, provided that the United States has not withdrawn its consent, which it may do at any time before the entry of the proposed Final Judgment by serving notice on Defendants and by filing that notice with the Court.   Defendants agree to arrange, at their expense, publication as quickly as possible of the newspaper notice required by the APPA, which will be drafted by the United States in its sole discretion.   The publication must be arranged no later than three (3) business days after Defendants' receipt from the United States of the text of the notice and the identity of the newspaper within which the publication must be made.   Defendants must promptly send to the United States (1) confirmation that publication of the newspaper notice has been arranged, and (2) the certification of the publication prepared by the newspaper within which the notice was published.

B.      Defendants must abide by and comply with the provisions of the proposed Final Judgment, pending the Court's entry of the proposed Final Judgment, or until expiration of time for all appeals of any Court ruling declining entry of the proposed Final Judgment, and must,

from the date of the signing of this Stipulation and Order by the parties, comply with all the terms and provisions of the proposed Final Judgment. The United States will have the full rights and enforcement powers set forth in the proposed Final Judgment as though the same were in full force and effect as the final order of the Court.

      C.     Defendants must not consummate the transaction sought to be enjoined by the Complaint filed in this action before the Court has signed this Stipulation and Order.

      D.     This Stipulation and Order applies with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the parties and submitted to the Court.

      E.     If (1) the United States has withdrawn its consent, as provided in Paragraph IV(A) above, or (2) the proposed Final Judgment is not entered, the time has expired for all appeals of any Court ruling declining entry of the proposed Final Judgment, and the Court has not otherwise ordered continued compliance with the terms and provisions of the proposed Final Judgment, then the parties are released from all further obligations under this Stipulation and Order, and the making of this Stipulation and Order will be without prejudice to any party in this or any other proceeding.

      F.     Defendants represent that the divestitures ordered by the proposed Final Judgment can and will be made and that Defendants will not later raise a claim of mistake, hardship or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained therein.

## V.     ASSET PRESERVATION AND HOLD SEPARATE PROVISIONS

Until the divestitures required by the proposed Final Judgment have been accomplished:

A.      Defendants must preserve, maintain, and continue to operate the Military Airborne Radios Divestiture Assets and the Military GPS Divestiture Assets to ensure that the products and services produced by or sold by the Military Airborne Radios Divestiture Assets and the Military GPS Divestiture Assets continue to be ongoing, economically viable competitive product lines.

B.      Defendants must preserve, maintain, and continue to operate the Optical Systems Business as an independent, ongoing, economically viable competitive business, with management, sales and operations of such assets held entirely separate, distinct and apart from those of Defendants' other operations.  Defendants must not coordinate their production, marketing, or terms of sale of any products with those produced by or sold by the Optical Systems Business.

C.      Within twenty (20) days after entry of the Stipulation and Order, Defendants will inform the United States of the steps they have taken to comply with this Stipulation and Order.

D.      Defendants must take all steps necessary to ensure that (1) the Optical Systems Business will be maintained and operated as an independent, ongoing, economically viable and active competitor in the design, development, production, and sale of Optical Systems; (2) management of the Optical Systems Business will not be influenced by Defendants; and (3) the books, records, competitively sensitive sales, marketing and pricing information, and decision-making concerning production, distribution or sales of products by the Optical Systems Business will be kept separate and apart from Defendants' other operations.

E.      Defendants must maintain at 2019 or previously approved levels for 2020, whichever are higher, all promotional, advertising, sales, technical assistance, research and development, marketing and merchandising support for the Divestiture Assets.

F.      Defendants must provide sufficient working capital and lines and sources of credit to continue to maintain the Divestiture Assets as economically viable and competitive, ongoing businesses, consistent with the requirements of Paragraphs V(A), V(B), and V(D).

G.      Defendants must take all steps necessary to ensure that the Divestiture Assets are fully maintained in operable condition at no less than their current capacity and sales, and must maintain and adhere to normal repair and maintenance schedules for the Divestiture Assets.

H.      Defendants must not, except as part of a divestiture approved by the United States in accordance with the terms of the proposed Final Judgment, remove, sell, lease, assign, transfer, pledge or otherwise dispose of any of the Divestiture Assets.

I.      Defendants must maintain, in accordance with sound accounting principles, separate, accurate and complete financial ledgers, books and records that report on a periodic basis, such as the last business day of every month, consistent with past practices, the assets, liabilities, expenses, revenues and income for each set of Divestiture Assets.

J.      Defendants must take no action that would jeopardize, delay, or impede the sale of the Divestiture Assets.

K.      Defendants must maintain the working conditions, staffing levels, and work force training and expertise associated with each set of Divestiture Assets. Relevant Personnel must not be transferred or reassigned except for transfer bids initiated by employees pursuant to Defendants' regular, established job posting policy. Defendants must provide the United States

13

with ten (10) calendar days' notice of the transfer of Relevant Personnel. Upon objection by the United States to such transfer, Relevant Personnel may not be transferred or reassigned. Defendants must use all reasonable efforts, including by providing financial incentives, to encourage Relevant Personnel to continue in the positions held as of the date of the signing of this Stipulation and Order by the United States and Defendants; however, financial incentives may not be structured so as to disincentivize employees from accepting employment with an Acquirer.

L.      UTC must appoint a person or persons to oversee the Military GPS Business and a separate person or persons to oversee the Optical Systems Business, and Raytheon must appoint a person or persons to oversee the Military Airborne Radios Business. Such persons will be responsible for Defendants' compliance with this Section. These persons will have complete responsibility for the Military GPS Business, the Optical Systems Business, and the Military Airborne Radios Business, respectively, for the duration of this Stipulation and Order, subject to the provisions of the Final Judgment. In the event any such person is unable to perform his or her duties, Defendants must appoint, subject to the approval of the United States, a replacement within ten (10) working days. Should Defendants fail to appoint a replacement acceptable to the United States within this time period, the United States will appoint a replacement.

M.      Defendants must take no action that would interfere with the ability of any trustee appointed pursuant to the proposed Final Judgment to complete the divestitures pursuant to the proposed Final Judgment to an Acquirer or Acquirers acceptable to the United States.

14

## VI.    DURATION OF ASSET PRESERVATION AND HOLD SEPARATE OBLIGATIONS

Defendants' obligations under Section V of this Stipulation and Order will remain in effect (1) with respect to the Military Airborne Radios Divestiture Assets other than any Military Airborne Radios Transition Assets, until consummation of the divestiture of the Military Airborne Radios Divestiture Assets as required by the proposed Final Judgment; (2) with respect to the Military Airborne Radios Transition Assets, until transfer of such assets as required by the proposed Final Judgment; (3) with respect to the Military GPS Divestiture Assets other than any Military GPS Transition Assets, until consummation of the divestiture of the Military GPS Divestiture Assets as required by the proposed Final Judgment; (4) with respect to the Military GPS Transition Assets, until transfer of such assets as required by the proposed Final Judgment; (5) with respect to the Optical Systems Divestiture Assets, until consummation of the divestiture of the Optical Systems Divestiture Assets as required by the proposed Final Judgment; or (6) until further order of the Court. If the United States voluntarily dismisses the Complaint in this matter, Defendants are released from all further obligations under this Stipulation and Order.

Dated: March 26, 2020

Respectfully submitted,

FOR PLAINTIFF
UNITED STATES OF AMERICA

_____/s/_____
KEVIN C. QUIN
United States Department of Justice
Antitrust Division
Defense, Industrials, and Aerospace Section

450 Fifth Street, NW, Suite 8700
Washington, DC 20530
Tel: (202) 307-0922
Fax: (202) 514-9033
Email: kevin.quin@usdoj.gov

FOR DEFENDANT
UNITED TECHNOLOGIES CORPORATION


_____/s/_____          _____/s/_____
SHAWN R. JOHNSON                 DAMIAN G. DIDDEN
Crowell & Moring LLP             Wachtell, Lipton, Rosen & Katz
1001 Pennsylvania Avenue NW      51 West 52nd Street
Washington, DC 20004             New York, NY 10019
Tel: (202) 624-2624              Tel: (212) 403-1113
Fax: (202) 628-5116              Fax: (212) 403-2113
Email: srjohnson@crowell.com     Email: DGDidden@WLRK.com

FOR DEFENDANT
RAYTHEON COMPANY


_____/s/_____
DAVID A. HIGBEE
Shearman & Sterling LLP
401 9th Street, NW
Washington, DC 20004
Tel: (202) 508-8071
Fax: (202) 661-7480
Email: david.higbee@shearman.com


O R D E R

IT IS SO ORDERED by the Court, this __27__ day of _March_____.


_____
United States District Judge