**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

UNITED STATES OF AMERICA,

                     Plaintiff,

        v.

UNITED TECHNOLOGIES CORPORATION,

and

RAYTHEON COMPANY,

                     Defendants.

---

**FINAL JUDGMENT**

WHEREAS, Plaintiff, United States of America, filed its Complaint on March 26, 2020, the United States and Defendants, United Technologies Corporation and Raytheon Company, by their respective attorneys, have consented to entry of this Final Judgment without trial or adjudication of any issue of fact or law and without this Final Judgment constituting any evidence against or admission by a party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by Defendants to assure that competition is not substantially lessened;

AND WHEREAS, Defendants agree to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants represent that the divestitures and other relief required by this Final Judgment can and will be made and that Defendants will not later raise a claim of hardship or difficulty as grounds for asking the Court to modify any provision of this Final Judgment;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

## I.    JURISDICTION

The Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II.    DEFINITIONS

As used in this Final Judgment:

A.      "Acquirer" or "Acquirers" means the entity or entities to whom Defendants divest any of the Divestiture Assets.

B.      "Acquirer of the Military Airborne Radios Divestiture Assets" means BAE or another entity to whom Defendants divest the Military Airborne Radios Divestiture Assets.

C.      "Acquirer of the Military GPS Divestiture Assets" means BAE or another entity to whom Defendants divest the GPS Divestiture Assets.

D.      "Acquirer of the Optical Systems Divestiture Assets" means the entity to whom Defendants divest the Optical Systems Divestiture Assets.

E.      "Divestiture Assets" means the Military Airborne Radios Divestiture Assets, the Military GPS Divestiture Assets, and the Optical Systems Divestiture Assets.

F.      "UTC" means Defendant United Technologies Corporation, a Delaware corporation with its headquarters in Farmington, Connecticut, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

G.      "Raytheon" means Defendant Raytheon Company, a Delaware corporation with its headquarters in Waltham, Massachusetts, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

H.      "BAE" means BAE Systems, Inc., a Delaware corporation with its headquarters in Arlington, Virginia, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

I.      "Military Airborne Radios" means radios that enable military aircraft to communicate with other aircraft and with the ground, either as standalone devices or as part of an integrated communication, navigation, and identification suite. "Military Airborne Radios" does not include Cryptographic Modules, identification friend or foe systems, or data links.

J.      "Cryptographic Modules" means hardware and software for encryption and decryption of radio signals and related application-specific integrated circuits and field-programmable gate arrays for the Military Airborne Radios Business.

K.      "Military Airborne Radios Business" means the business of the design, development, production, and sale of Military Airborne Radios by Raytheon's Tactical Communication Systems division.

L.      "Military Airborne Radios Divestiture Assets" means the Military Airborne Radios Business, including:

1.      All of Defendants' rights, title, and interests in the facilities located at the following addresses:

a.      5001 U.S. 30 Highway, Fort Wayne, Indiana 46818 (the "Fort Wayne Facility");

b.      Office 135 of Building 100 located at the county-owned facility at 7887 Bryan Dairy Road, Largo, Florida 33777;

2.      All tangible assets related to or used in connection with the Military Airborne Radios Business, including but not limited to: all manufacturing equipment, quality assurance equipment, research and development equipment, machine assembly equipment, tooling and fixed assets, personal property, inventory, office furniture, materials, supplies, and other tangible property; all licenses, permits, certifications, and authorizations issued by any governmental organization; all contracts, teaming arrangements, agreements, leases, commitments, certifications, and understandings, including supply agreements; all customer lists, contracts, accounts, and credit records; all repair and performance records; and all other records;

3.      All intangible assets related to or used in connection with the Military Airborne Radios Business, including but not limited to: all patents; licenses and sublicenses; intellectual property; copyrights; trademarks, trade names, service marks, and service names

(excluding any trademarks, trade names, service marks, or service names containing the name "Raytheon"); technical information; computer software and related documentation; customer relationships, agreements, and contracts; know-how; trade secrets; drawings; blueprints; designs; design protocols; specifications for materials; specifications for parts and devices; safety procedures for the handling of materials and substances; quality assurance and control procedures; design tools and simulation capability; all manuals and technical information Raytheon provides to its own employees, customers, suppliers, agents, or licensees; and all research data concerning historic and current research and development efforts, including but not limited to designs of experiments and the results of successful and unsuccessful designs and experiments; and

4.    At the option of the Acquirer of the Military Airborne Radios Divestiture Assets, a worldwide, non-exclusive, royalty-free, irrevocable, paid-up, perpetual license to any intellectual property related to Cryptographic Modules that is held by Raytheon at the time of the filing of the Complaint in this action, or is developed by Raytheon during the term of the supply contract required by Paragraph IV(H) of this Final Judgment, including any extensions of that term approved by the United States;

*Provided, however*, that the assets specified in Paragraphs II(L)(1)-(4) above, do not include (i) the space leased by Raytheon at 1010 Production Road, Fort Wayne, Indiana 46818; (ii) the space leased by Raytheon in Buildings 100, 400 and 600 at the county-owned facility located at 7887 Bryan Dairy Road, Largo, Florida 33777 (other than Office 135 of Building 100); or (iii) intellectual property solely related to Cryptographic Modules, except as set forth in Paragraph II(L)(4).

5

M.      "Military Airborne Radios Personnel" means all full-time, part-time, or contract personnel who are or were, at any time between June 9, 2019 and the date on which the Military Airborne Radios Divestiture Assets are divested, (i) employees of the Military Airborne Radios Business, (ii) employees of Raytheon primarily involved in the design, development, production, and sale of Military Airborne Radios (except for Raytheon employees primarily engaged in human resources, legal, or other general or administrative support functions), or (iii) at the option of the Acquirer of the Military Airborne Radios Divestiture Assets, up to sixteen (16) employees of Raytheon knowledgeable in the design, development, production, and use of Cryptographic Modules, to be selected by the Acquirer of the Military Airborne Radios Divestiture Assets. The United States, in its sole discretion, will resolve any disagreement regarding which employees are Military Airborne Radios Personnel.

N.      "Military Airborne Radios Transition Assets" means those Military Airborne Radios Divestiture Assets required for Defendants to comply with their obligations under the supply contract required by Paragraph IV(H) of this Final Judgment.

O.      "Military GPS Systems" means military receivers and anti-jam products for global positioning satellite systems.

P.      "Military GPS Business" means UTC's business in the design, development, production, and sale of Military GPS Systems.

Q.      "Military GPS Divestiture Assets" means the Military GPS Business, including:

1.      All tangible assets related to or used in connection with the Military GPS Business, including but not limited to: all manufacturing equipment, quality assurance equipment, research and development equipment, machine assembly equipment, tooling and

6

fixed assets, personal property, inventory, office furniture, materials, supplies, and other tangible property; all licenses, permits, certifications, and authorizations issued by any governmental organization; all contracts, teaming arrangements, agreements, leases, commitments, certifications, and understandings, including supply agreements; all customer lists, contracts, accounts, and credit records; all repair and performance records; and all other records;

       2.    All intangible assets related to or used in connection with the Military GPS Business, including but not limited to: all patents; licenses and sublicenses; intellectual property; copyrights; trademarks, trade names, service marks, and service names (excluding any trademarks, trade names, service marks, or service names containing the name "United Technologies," "Rockwell," "Collins," "UTC," or "UTX"); technical information; computer software and related documentation; customer relationships, agreements, and contracts; know-how; trade secrets; drawings; blueprints; designs; design protocols; specifications for materials; specifications for parts and devices; safety procedures for the handling of materials and substances; quality assurance and control procedures; design tools and simulation capability; all manuals and technical information UTC provides to its own employees, customers, suppliers, agents, or licensees; and all research data concerning historic and current research and development efforts, including but not limited to designs of experiments and the results of successful and unsuccessful designs and experiments;

*Provided, however,* the assets specified in Paragraphs II(Q)(1)-(2) above do not include (i) the facility located at 855 35th Street NE, Cedar Rapids, Iowa 52498 (the "Cedar Rapids Facility") or (ii) the facility located at 2855 Heartland Drive, Coralville, Iowa 52241 (the "Coralville Facility").

R.      "Military GPS Personnel" means all full-time, part-time, or contract personnel who are or were, at any time between June 9, 2019 and the date on which the Military GPS Divestiture Assets are divested, (i) employees of the Military GPS Business, or (ii) employees of UTC primarily involved in the design, development, production, and sale of Military GPS Systems (except for UTC employees primarily engaged in human resources, legal, or other general or administrative support functions). The United States, in its sole discretion, will resolve any disagreement regarding which employees are Military GPS Personnel.

S.      "Military GPS Transition Assets" means those Military GPS Divestiture Assets required for Defendants to comply with their obligations under the supply contract required by Paragraph V(H) of this Final Judgment.

T.      "Optical Systems" means electro-optical/infrared systems for national security space missions and defense laser warning survivability subsystems.

U.      "Optical Systems Business" means UTC's business in the design, development, production, and sale of Optical Systems.

V.      "Optical Systems Divestiture Assets" means the Optical Systems Business, including:

1.      All of Defendants' rights, title, and interests in the facility located at 100 Wooster Heights, Danbury, Connecticut 06810;

2.      All tangible assets related to or used in connection with the Optical Systems Business, including but not limited to: all manufacturing equipment, quality assurance equipment, research and development equipment, machine assembly equipment, tooling and fixed assets, personal property, inventory, office furniture, materials, supplies, and other tangible

8

property; all licenses, permits, certifications, and authorizations issued by any governmental organization; all contracts, teaming arrangements, agreements, leases, commitments, certifications, and understandings, including supply agreements; all customer lists, contracts, accounts, and credit records; all repair and performance records; and all other records; and

        3.    All intangible assets related to or used in connection with the Optical Systems Business, including but not limited to: all patents; licenses and sublicenses; intellectual property; copyrights; trademarks, trade names, service marks, and service names (excluding any trademarks, trade names, service marks, or service names containing the name "United Technologies," "Rockwell," "Collins," "UTC," or "UTX"); technical information; computer software and related documentation; customer relationships, agreements, and contracts; know-how; trade secrets; drawings; blueprints; designs; design protocols; specifications for materials; specifications for parts and devices; safety procedures for the handling of materials and substances; quality assurance and control procedures; design tools and simulation capability; all manuals and technical information UTC provides to its own employees, customers, suppliers, agents, or licensees; and all research data concerning historic and current research and development efforts, including but not limited to designs of experiments and the results of successful and unsuccessful designs and experiments.

        W.    "Optical Systems Personnel" means all full-time, part-time, or contract personnel who are or were, at any time between June 9, 2019 and the date on which the Optical Systems Divestiture Assets are divested, (i) employees of the Optical Systems Business, or (ii) employees of UTC involved in the design, development, production, and sale of Optical Systems (except for UTC employees primarily engaged in human resources, legal, or other general or administrative

support functions). The United States, in its sole discretion, will resolve any disagreement regarding which employees are Optical Systems Personnel.

X.     "Transaction Regulatory Approvals" means any approvals or clearances pursuant to filings with the Committee on Foreign Investment in the United States ("CFIUS") or under antitrust or competition laws required for the Transaction to proceed.

Y.     "Military Airborne Radios Divestiture Assets Regulatory Approvals" means any approvals or clearances pursuant to filings with CFIUS, or under antitrust, competition, or other U.S. or international laws or regulations required for the acquisition of the Military Airborne Radios Divestiture Assets by the Acquirer of the Military Airborne Radios Divestiture Assets.

Z.     "Military GPS Divestiture Assets Regulatory Approvals" means any approvals or clearances pursuant to filings with CFIUS, or under antitrust, competition, or other U.S. or international laws or regulations required for the acquisition of the Military GPS Divestiture Assets by the Acquirer of the Military GPS Divestiture Assets.

AA.     "Optical Systems Divestiture Assets Regulatory Approvals" means any approvals or clearances pursuant to filings with CFIUS, or under antitrust, competition, or other U.S. or international laws or regulations required for the acquisition of the Optical Systems Divestiture Assets by the Acquirer of the Optical Systems Divestiture Assets.

BB.     The "Transaction" means the proposed merger between UTC and Raytheon.

### III.     APPLICABILITY

A.     This Final Judgment applies to UTC and Raytheon, as defined above, and all other persons, in active concert or participation with any Defendant, who receive actual notice of this Final Judgment.

B.      If, prior to complying with Section IV, Section V, Section VI, and Section VII of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, Defendants must require the purchaser to be bound by the provisions of this Final Judgment. Defendants need not obtain such an agreement from Acquirers.

## IV.    DIVESTITURE OF THE MILITARY AIRBORNE RADIOS BUSINESS

A.      Defendants are ordered and directed, within the later of forty-five (45) calendar days after the Court's entry of the Asset Preservation and Hold Separate Stipulation and Order in this matter, or fifteen (15) calendar days after the Transaction Regulatory Approvals and the Military Airborne Radios Divestiture Assets Regulatory Approvals have been received, to divest the Military Airborne Radios Divestiture Assets in a manner consistent with this Final Judgment to BAE or an alternative Acquirer acceptable to the United States, in its sole discretion. The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed sixty (60) calendar days in total and will notify the Court of any extensions. Defendants agree to use their best efforts to divest the Military Airborne Radios Divestiture Assets as expeditiously as possible. Notwithstanding the foregoing, at the option of the Acquirer of the Military Airborne Radios Divestiture Assets, and subject to approval by the United States in its sole discretion, Defendants may, for the sole purpose of fulfilling the supply contract required by Paragraph IV(H) of this Final Judgment, retain the Military Airborne Radios Transition Assets until the earlier of (i) thirty (30) calendar days after the Acquirer of the Military Airborne Radios Divestiture Assets terminates the supply contract required by Paragraph IV(H) of this Final Judgment and requests the transfer of such assets or (ii) thirty (30)

11

calendar days following the expiration of the supply contract required by Paragraph IV(H) of this Final Judgment.

       B.     In the event Defendants are attempting to divest the Military Airborne Radios Divestiture Assets to an Acquirer other than BAE, Defendants promptly must make known, by usual and customary means, the availability of the Military Airborne Radios Divestiture Assets. Defendants must inform any person making an inquiry regarding a possible purchase of the Military Airborne Radios Divestiture Assets that the Military Airborne Radios Divestiture Assets are being divested in accordance with this Final Judgment and must provide that person with a copy of this Final Judgment. Defendants must offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Military Airborne Radios Divestiture Assets customarily provided in a due-diligence process; provided, however, that Defendants need not provide information or documents subject to the attorney-client privilege or work-product doctrine. Defendants must make this information available to the United States at the same time that the information is made available to any other person.

       C.     Defendants must cooperate with and assist the Acquirer of the Military Airborne Radios Divestiture Assets in identifying and hiring all Military Airborne Radios Personnel, including:

       1.     Within ten (10) business days following the filing of the Complaint in this matter, Defendants must identify all Military Airborne Radios Personnel to the Acquirer of the Military Airborne Radios Divestiture Assets and the United States, including by providing organization charts covering all Military Airborne Radios Personnel.

2.     Within ten (10) business days following receipt of a request by the Acquirer of the Military Airborne Radios Divestiture Assets or the United States, Defendants must provide to the Acquirer of the Military Airborne Radios Divestiture Assets and the United States the following additional information related to Military Airborne Radios Personnel: name; job title; current salary and benefits including most recent bonus paid, aggregate annual compensation, current target or guaranteed bonus, if any, and any other payments due to or promises made to the employee; descriptions of reporting relationships, past experience, responsibilities, and training and educational histories; lists of all certifications; and all job performance evaluations. If Defendants are barred by any applicable laws from providing any of this information, within ten (10) business days following receipt of the request, Defendants must provide the requested information to the full extent permitted by law and also must provide a written explanation of Defendants' inability to provide the remaining information.

3.     At the request of the Acquirer of the Military Airborne Radios Divestiture Assets, Defendants must promptly make Military Airborne Radios Personnel available for private interviews with the Acquirer of the Military Airborne Radios Divestiture Assets during normal business hours at a mutually agreeable location.

4.     Defendants must not interfere with any efforts by the Acquirer of the Military Airborne Radios Divestiture Assets to employ any Military Airborne Radios Personnel. Interference includes but is not limited to offering to increase the salary or improve the benefits of Military Airborne Radios Personnel unless the offer is part of a company-wide increase in salary or benefits that was announced prior to June 9, 2019 or has been approved by the United States, in its sole discretion. Defendants' obligations under this paragraph will expire (i) for

13

Military Airborne Radios Personnel whose services are not required for Defendants to perform under the supply contract required by Paragraph IV(H) of this Final Judgment, six (6) months after the divestiture of the Military Airborne Radios Divestiture Assets pursuant to this Final Judgment, and (ii) for Military Airborne Radios Personnel whose services are required for Defendants to perform under the supply contract required by Paragraph IV(H) of this Final Judgment, six (6) months after the expiration of that supply contract.

        5.      For Military Airborne Radios Personnel who elect employment with the Acquirer of the Military Airborne Radios Divestiture Assets within the periods set forth in Paragraph IV(C)(4), Defendants must waive all non-compete and non-disclosure agreements, vest all unvested pension and other equity rights, and provide all benefits that those Military Airborne Radios Personnel otherwise would have been provided had the Military Airborne Radios Personnel continued employment with Defendants, including but not limited to any retention bonuses or payments. Defendants may maintain reasonable restrictions on disclosure by Military Airborne Radios Personnel of Defendants' proprietary non-public information that is unrelated to Military Airborne Radios Divestiture Assets and not otherwise required to be disclosed by this Final Judgment.

        6.      For a period of twelve (12) months from the date on which the Military Airborne Radios Divestiture Assets are divested to the Acquirer of the Military Airborne Radios Divestiture Assets, Defendants may not solicit to rehire Military Airborne Radios Personnel who were hired by the Acquirer of the Military Airborne Radios Divestiture Assets within the period set forth in Paragraph IV(C)(4)(i), unless (a) an individual is terminated or laid off by the Acquirer of the Military Airborne Radios Divestiture Assets or (b) the Acquirer of the Military

14

Airborne Radios Divestiture Assets agrees in writing that Defendants may solicit to rehire that individual. Nothing in this paragraph prohibits Defendants from advertising employment openings using general solicitations or advertisements.

        7.    For a period of twelve (12) months following the expiration of the supply contract required by Paragraph IV(H) of this Final Judgment, Defendants may not solicit to rehire Military Airborne Radios Personnel whose services were required for Defendants to perform under that supply contract and who were hired by the Acquirer of the Military Airborne Radios Divestiture Assets within the period set forth in Paragraph IV(C)(4)(ii), unless (a) an individual is terminated or laid off by the Acquirer of the Military Airborne Radios Divestiture Assets or (b) the Acquirer of the Military Airborne Radios Divestiture Assets agrees in writing that Defendants may solicit to rehire that individual. Nothing in this paragraph prohibits Defendants from advertising employment openings using general solicitations or advertisements.

    D.    Defendants must permit prospective Acquirers of the Military Airborne Radios Divestiture Assets to have reasonable access to make inspections of the physical facilities and access to all environmental, zoning, and other permit documents and information, and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

    E.    Defendants must warrant to the Acquirer of the Military Airborne Radios Divestiture Assets that each asset to be divested will be fully operational and without material defect on the date of their transfer to the Acquirer of the Military Airborne Radios Divestiture Assets.

F.      Defendants must not take any action that will impede in any way the permitting, operation, or divestiture of the Military Airborne Radios Divestiture Assets.

G.      Defendants must make best efforts to assign, subcontract, or otherwise transfer all contracts related to the Military Airborne Radios Divestiture Assets, including all supply and sales contracts, to the Acquirer of the Military Airborne Radios Divestiture Assets. Defendants must not interfere with any negotiations between the Acquirer of the Military Airborne Radios Divestiture Assets and a contracting party.

H.      At the option of the Acquirer of the Military Airborne Radios Divestiture Assets, and subject to approval by the United States in its sole discretion, on or before the date on which the Military Airborne Radios Divestiture Assets are divested to the Acquirer of the Military Airborne Radios Divestiture Assets, Defendants must enter into a supply contract for Military Airborne Radios sufficient to meet the needs of the Military Airborne Radios Business, as determined by the Acquirer of the Military Airborne Radios Divestiture Assets, for a period of up to twelve (12) months on terms and conditions reasonably related to market conditions for Military Airborne Radios. The United States, in its sole discretion, may approve one or more extensions of this supply contract, for a total of up to an additional twelve (12) months. If the Acquirer of the Military Airborne Radios Divestiture Assets seeks an extension of the term of this supply contract, Defendants must notify the United States in writing at least three (3) months prior to the date the supply contract expires. The Acquirer of the Military Airborne Radios Divestiture Assets may terminate this supply contract without cost or penalty at any time upon commercially reasonable notice. The employee(s) of Defendants tasked with supporting this

16

supply contract must not share any competitively sensitive information of the Acquirer of the Military Airborne Radios Divestiture Assets with any other employee of Defendants.

     I.     At the option of the Acquirer of the Military Airborne Radios Divestiture Assets, and subject to approval by the United States in its sole discretion, on or before the date on which the Military Airborne Radios Divestiture Assets are divested to the Acquirer of the Military Airborne Radios Divestiture Assets, Defendants must enter into a supply contract for the manufacture of Cryptographic Modules sufficient to meet the needs of the Military Airborne Radios Business, as determined by the Acquirer of the Military Airborne Radios Divestiture Assets, for a period of up to twelve (12) months on terms and conditions reasonably related to market conditions for Cryptographic Modules. The United States, in its sole discretion, may approve one or more extensions of this supply contract, for a total of up to an additional twelve (12) months. If the Acquirer of the Military Airborne Radios Divestiture Assets seeks an extension of the term of this supply contract, Defendants must notify the United States in writing at least three (3) months prior to the date the supply contract expires. The Acquirer of the Military Airborne Radios Divestiture Assets may terminate this supply contract without cost or penalty at any time upon commercially reasonable notice. Defendants must maintain any National Security Agency certifications or approvals necessary to supply the products manufactured under the supply contract entered into pursuant to this paragraph. The employee(s) of Defendants tasked with supporting this supply contract must not share any competitively sensitive information of the Acquirer of the Military Airborne Radios Divestiture Assets with any other employee of Defendants.

J.      At the option of the Acquirer of the Military Airborne Radios Divestiture Assets, and subject to approval by the United States in its sole discretion, on or before the date on which the Military Airborne Radios Divestiture Assets are divested to the Acquirer of the Military Airborne Radios Divestiture Assets, Defendants must enter into a contract to provide transition services for back office, human resource, and information technology services and support for the Military Airborne Radios Business for a period of up to twelve (12) months on terms and conditions reasonably related to market conditions for the transition services. The United States, in its sole discretion, may approve one or more extensions of this contract for transition services, for a total of up to an additional twelve (12) months. If the Acquirer of the Military Airborne Radios Divestiture Assets seeks an extension of the term of this contract for transition services, Defendants must notify the United States in writing at least three (3) months prior to the date the contract expires. The Acquirer of the Military Airborne Radios Divestiture Assets may terminate a contract for transition services without cost or penalty at any time upon commercially reasonable notice. The employee(s) of Defendants tasked with providing these transition services must not share any competitively sensitive information of the Acquirer of the Military Airborne Radios Divestiture Assets with any other employee of Defendants.

K.      At the option of the Acquirer of the Military Airborne Radios Divestiture Assets, Defendants must provide the Acquirer of the Military Airborne Radios Divestiture Assets with complete and sole access to the laboratories located in rooms 01-007V004 and 01-002V001 in Building C1-SW, 1010 Production Road, Fort Wayne, Indiana 46818, until the Acquirer of the Military Airborne Radios Divestiture Assets receives any necessary certifications for its own laboratory space, for a period not to exceed three (3) months. The United States, in its sole

18

discretion, may approve one or more extensions of this period, for a total of up to an additional three (3) months. If the Acquirer of the Military Airborne Radios Divestiture Assets seeks an extension of this period, Defendants must notify the United States in writing at least thirty (30) days prior to the date this period expires.

L.      At the option of the Acquirer of the Military Airborne Radios Divestiture Assets, Defendants must provide the Acquirer of the Military Airborne Radios Divestiture Assets with complete and sole access to rooms C1-W-HWL-M, C1-W-Demo, and C1-W-TCS-CR in Building C1-SW, 1010 Production Road, Fort Wayne, Indiana 46818, for three (3) pre-scheduled, 8-hour shifts per room each week, selected by the Acquirer of the Military Airborne Radios Divestiture Assets, until the Acquirer of the Military Airborne Radios Divestiture Assets receives any necessary certifications for its own laboratory space, for a period not to exceed six (6) months. The United States, in its sole discretion, may approve one or more extensions of this period, for a total of up to an additional six (6) months. If the Acquirer of the Military Airborne Radios Divestiture Assets seeks an extension of this period, Defendants must notify the United States in writing at least thirty (30) days prior to the date this period expires.

M.     Defendants must warrant to the Acquirer of the Military Airborne Radios Divestiture Assets that there are no material defects in the environmental, zoning, or other permits pertaining to the operation of the Military Airborne Radios Divestiture Assets. Following the sale of the Military Airborne Radios Divestiture Assets, Defendants must not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Military Airborne Radios Divestiture Assets.

N.        Unless the United States otherwise consents in writing, the divestiture pursuant to Section IV or by a Divestiture Trustee appointed pursuant to Section VII of this Final Judgment must include the entire Military Airborne Radios Divestiture Assets and must be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Military Airborne Radios Divestiture Assets can and will be used by the Acquirer of the Military Airborne Radios Divestiture Assets as part of a viable, ongoing business in the design, development, production, and sale of Military Airborne Radios, and will remedy the competitive harm alleged in the Complaint.   The divestiture, whether pursuant to Section IV or Section VII of this Final Judgment:

(1)        must be made to an Acquirer that, in the United States' sole judgment, has the intent and capability (including the necessary managerial, operational, technical, and financial capability) of competing effectively in the business of the design, development, production, and sale of Military Airborne Radios; and

(2)        must be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between an Acquirer and Defendants give Defendants the ability unreasonably to raise the Acquirer of the Military Airborne Radios Divestiture Assets' costs, to lower the Acquirer of the Military Airborne Radios Divestiture Assets' efficiency, or otherwise to interfere in the ability of the Acquirer of the Military Airborne Radios Divestiture Assets to compete effectively.

P.        If any term of an agreement between Defendants and the Acquirer of the Military Airborne Radios Divestiture Assets to effectuate the divestiture required by this Final Judgment varies from a term of this Final Judgment then, to the extent that Defendants cannot fully comply with both, this Final Judgment determines Defendants' obligations.

## V.   DIVESTITURE OF THE MILITARY GPS BUSINESS

A.      Defendants are ordered and directed, within the later of forty-five (45) calendar days after the Court's entry of the Asset Preservation and Hold Separate Stipulation and Order in this matter, or fifteen (15) calendar days after the Transaction Regulatory Approvals and the Military GPS Divestiture Assets Regulatory Approvals have been received, to divest the Military GPS Divestiture Assets in a manner consistent with this Final Judgment to BAE or an alternative Acquirer acceptable to the United States, in its sole discretion.  The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed sixty (60) calendar days in total and will notify the Court of any extensions.  Defendants agree to use their best efforts to divest the Military GPS Divestiture Assets as expeditiously as possible. Notwithstanding the foregoing, at the option of the Acquirer of the Military GPS Divestiture Assets, and subject to approval by the United States in its sole discretion, Defendants may retain, for the sole purpose of fulfilling the supply contract required by Paragraph V(H) of this Final Judgment, the Military GPS Transition Assets until the earlier of (i) thirty (30) calendar days after the Acquirer of the Military GPS Divestiture Assets terminates the supply contract required by Paragraph V(H) of this Final Judgment and requests the transfer of such assets or (ii) thirty (30) calendar days following the completion of the supply contract required by Paragraph V(H) of this Final Judgment.

B.      In the event Defendants are attempting to divest the Military GPS Divestiture Assets to an Acquirer other than BAE, Defendants promptly must make known, by usual and customary means, the availability of the Military GPS Divestiture Assets. Defendants must inform any person making an inquiry regarding a possible purchase of the Military GPS

Divestiture Assets that the Military GPS Divestiture Assets are being divested in accordance with this Final Judgment and must provide that person with a copy of this Final Judgment. Defendants must offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Military GPS Divestiture Assets customarily provided in a due-diligence process; provided, however, that Defendants need not provide information or documents subject to the attorney-client privilege or work-product doctrine. Defendants must make this information available to the United States at the same time that the information is made available to any other person.

C.     Defendants must cooperate with and assist the Acquirer of the Military GPS Divestiture Assets in identifying and hiring all Military GPS Personnel, including:

1.     Within ten (10) business days following the filing of the Complaint in this matter, Defendants must identify all Military GPS Personnel to the Acquirer of the Military GPS Divestiture Assets and the United States, including by providing organization charts covering all Military GPS Personnel.

2.     Within ten (10) business days following receipt of a request by the Acquirer of the Military GPS Divestiture Assets or the United States, Defendants must provide to the Acquirer of the Military GPS Divestiture Assets and the United States the following additional information related to Military GPS Personnel: name; job title; current salary and benefits including most recent bonus paid, aggregate annual compensation, current target or guaranteed bonus, if any, and any other payments due to or promises made to the employee; descriptions of reporting relationships, past experience, responsibilities, and training and educational histories; lists of all certifications; and all job performance evaluations. If Defendants

22

are barred by any applicable laws from providing any of this information, within ten (10) business days following receipt of the request, Defendants must provide the requested information to the full extent permitted by law and also must provide a written explanation of Defendants' inability to provide the remaining information.

        3.      At the request of the Acquirer of the Military GPS Divestiture Assets, Defendants must promptly make Military GPS Personnel available for private interviews with the Acquirer of the Military GPS Divestiture Assets during normal business hours at a mutually agreeable location.

        4.      Defendants must not interfere with any efforts by the Acquirer of the Military GPS Divestiture Assets to employ any Military GPS Personnel. Interference includes but is not limited to offering to increase the salary or improve the benefits of Military GPS Personnel unless the offer is part of a company-wide increase in salary or benefits that was announced prior to June 9, 2019 or has been approved by the United States, in its sole discretion. Defendants' obligations under this paragraph will expire (i) for Military GPS Personnel whose services are not required for Defendants to perform under the supply contract required by Paragraph V(H) of this Final Judgment, six (6) months after the divestiture of the Military GPS Divestiture Assets pursuant to this Final Judgment, and (ii) for Military GPS Personnel whose services are required for Defendants to perform under the supply contract required by Paragraph V(H) of this Final Judgment, six (6) months after the expiration of that supply contract.

        5.      For Military GPS Personnel who elect employment with the Acquirer of the Military GPS Divestiture Assets within the periods set forth in Paragraph V(C)(4), Defendants must waive all non-compete and non-disclosure agreements, vest all unvested

pension and other equity rights, and provide all benefits that those Military GPS Personnel otherwise would have been provided had the Military GPS Personnel continued employment with Defendants, including but not limited to any retention bonuses or payments. Defendants may maintain reasonable restrictions on disclosure by Military GPS Personnel of Defendants' proprietary non-public information that is unrelated to Military GPS Divestiture Assets and not otherwise required to be disclosed by this Final Judgment.

6.      For a period of twelve (12) months from the date on which the Military GPS Divestiture Assets are divested to the Acquirer of the Military GPS Divestiture Assets, Defendants may not solicit to rehire Military GPS Personnel who were hired by the Acquirer of the Military GPS Divestiture Assets within the period set forth in Paragraph V(C)(4)(i) unless (a) an individual is terminated or laid off by the Acquirer of the Military GPS Divestiture Assets or (b) the Acquirer of the Military GPS Divestiture Assets agrees in writing that Defendants may solicit to rehire that individual. Nothing in this paragraph prohibits Defendants from advertising employment openings using general solicitations or advertisements.

7.      For a period of twelve (12) months following the expiration of the supply contract required by Paragraph V(H) of this Final Judgment, Defendants may not solicit to rehire Military GPS Personnel whose services were required for Defendants to perform under that supply contract and who were hired by the Acquirer of the Military GPS Divestiture Assets within the period set forth in Paragraph V(C)(4)(ii) unless (a) an individual is terminated or laid off by the Acquirer of the Military GPS Divestiture Assets or (b) the Acquirer of the Military GPS Divestiture Assets agrees in writing that Defendants may solicit to rehire that individual.

Nothing in this paragraph prohibits Defendants from advertising employment openings using general solicitations or advertisements.

D.      Defendants must permit prospective Acquirers of the Military GPS Divestiture Assets to have reasonable access to make inspections of the physical facilities and access to all environmental, zoning, and other permit documents and information, and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

E.      Defendants must warrant to the Acquirer of the Military GPS Divestiture Assets that each asset to be divested will be fully operational and without material defect on the date of their transfer to the Acquirer of the Military GPS Divestiture Assets.

F.      Defendants must not take any action that will impede in any way the permitting, operation, or divestiture of the Military GPS Divestiture Assets.

G.      Defendants must make best efforts to assign, subcontract, or otherwise transfer all contracts related to the Military GPS Divestiture Assets, including all supply and sales contracts, to the Acquirer of the Military GPS Divestiture Assets. Defendants must not interfere with any negotiations between the Acquirer of the Military GPS Divestiture Assets and a contracting party.

H.      At the option of the Acquirer of the Military GPS Divestiture Assets, and subject to approval by the United States in its sole discretion, on or before the date on which the Military GPS Divestiture Assets are divested to the Acquirer of the Military GPS Divestiture Assets, Defendants must enter into a supply contract for Military GPS Systems sufficient to meet the needs of the Military GPS Business, as determined by the Acquirer of the Military GPS

25

Divestiture Assets, for a period of up to twelve (12) months on terms and conditions reasonably related to market conditions for Military GPS Systems. The United States, in its sole discretion, may approve one or more extensions of this supply contract, for a total of up to an additional twelve (12) months. If Acquirer of the Military GPS Divestiture Assets seeks an extension of the term of this supply contract, Defendants must notify the United States in writing at least three (3) months prior to the date the supply contract expires. The Acquirer of the Military GPS Divestiture Assets may terminate this supply contract without cost or penalty at any time upon commercially reasonable notice. The employee(s) of Defendants tasked with supporting this supply contract must not share any competitively sensitive information of the Acquirer of the Military GPS Divestiture Assets with any other employee of Defendants.

   I.  At the option of Acquirer of the Military GPS Divestiture Assets, and subject to approval by the United States in its sole discretion, on or before the date on which the Military GPS Divestiture Assets are divested to the Acquirer of the Military GPS Divestiture Assets, Defendants must enter into a contract to provide transition services for back office, human resource, and information technology services and support for the Military GPS Business for a period of up to twelve (12) months on terms and conditions reasonably related to market conditions for the transition services. The United States, in its sole discretion, may approve one or more extensions of this contract for transition services, for a total of up to an additional twelve (12) months. If the Acquirer of the Military GPS Divestiture Assets seeks an extension of the term of this contract for transition services, Defendants must notify the United States in writing at least three (3) months prior to the date the contract expires. The Acquirer of the Military GPS Divestiture Assets may terminate a contract for transition services without cost or penalty at any

time upon commercially reasonable notice.  The employee(s) of Defendants tasked with providing these transition services must not share any competitively sensitive information of the Acquirer of the Military GPS Divestiture Assets with any other employee of Defendants.

J.      At the option of the Acquirer of the Military GPS Divestiture Assets, and subject to approval by the United States in its sole discretion, on or before the date on which the Military GPS Divestiture Assets are divested to the Acquirer of the Military GPS Divestiture Assets, Defendants must enter into a lease for the Cedar Rapids Facility for a period of up to twelve (12) months on terms and conditions reasonably related to market conditions.  The United States, in its sole discretion, may approve one or more extensions of this lease, for a total of up to an additional six (6) months.  If the Acquirer of the Military GPS Divestiture Assets seeks an extension of the term of this lease, Defendants must notify the United States in writing at least three (3) months prior to the date the contract expires.  The Acquirer of the Military GPS Divestiture Assets may terminate a lease without cost or penalty at any time upon commercially reasonable notice.

K.      For a period of six (6) months following the divestiture of the Military GPS Divestiture Assets, Defendants must provide the Acquirer of the Military GPS Divestiture Assets with complete and sole access to Laboratories 43, 44, 44 Room 6, 53B, 53C, 53D, 60A, 60B, 60C, 60D, 60F, and 60G located in the Cedar Rapids Facility and Laboratories 2, 4, 1CD100, 1CB100, and 1C0200 located in the Coralville Facility for two (2) pre-scheduled, 8-hour shifts per laboratory each day, with the Acquirer of the Military GPS Divestiture Assets having first choice among the shifts at each laboratory for three business days per week.  After that six (6) month period, until the expiration of the supply contract required by Paragraph V(H) of this Final

Judgment, Defendants must provide the Acquirer of the Military GPS Divestiture Assets with unlimited complete and sole access to all the laboratories identified in this Paragraph located in the Cedar Rapids Facility and the Coralville Facility, except that the access to Laboratories 1CB100, 1C0200, and 2 of the Coralville Facility and Laboratories 60A, 60D, and 60G of the Cedar Rapids Facility will continue to be for two (2) pre-scheduled, 8-hour shifts each day, with the Acquirer of the Military GPS Divestiture Assets having first choice among the shifts for three business days per week.

L.    Defendants must warrant to the Acquirer of the Military GPS Divestiture Assets that there are no material defects in the environmental, zoning, or other permits pertaining to the operation of the Divestiture Assets. Following the sale of the Military GPS Divestiture Assets, Defendants must not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Military GPS Divestiture Assets.

M.    Unless the United States otherwise consents in writing, the divestiture pursuant to Section V or by a Divestiture Trustee appointed pursuant to Section VII of this Final Judgment must include the entire Military GPS Divestiture Assets and must be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Military GPS Divestiture Assets can and will be used by the Acquirer of the Military GPS Divestiture Assets as part of a viable, ongoing business in the design, development, production, and sale of Military GPS Systems, and will remedy the competitive harm alleged in the Complaint. The divestiture, whether pursuant to Section V or Section VII of this Final Judgment:

> (1)    must be made to an Acquirer that, in the United States' sole judgment, has the intent and capability (including the necessary managerial, operational, technical, and financial capability) of competing effectively in the business

of the design, development, production, and sale of Military GPS Systems; and

(2)    must be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between an Acquirer and Defendants give Defendants the ability unreasonably to raise the Acquirer of the Military GPS Divestiture Assets' costs, to lower the Acquirer of the Military GPS Divestiture Assets' efficiency, or otherwise to interfere in the ability of the Acquirer of the Military GPS Divestiture Assets to compete effectively.

N.    If any term of an agreement between Defendants and the Acquirer of the Military GPS Divestiture Assets to effectuate the divestiture required by this Final Judgment varies from a term of this Final Judgment then, to the extent that Defendants cannot fully comply with both, this Final Judgment determines Defendants' obligations.

## VI.    DIVESTITURE OF THE OPTICAL SYSTEMS BUSINESS

A.    Defendants are ordered and directed, within the later of ninety (90) calendar days after the Court's entry of the Asset Preservation and Hold Separate Stipulation and Order in this matter, or fifteen (15) calendar days after the Transaction Regulatory Approvals and the Optical Systems Divestiture Assets Regulatory Approvals have been received, to divest the Optical Systems Divestiture Assets in a manner consistent with this Final Judgment to an Acquirer acceptable to the United States, in its sole discretion. The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed sixty (60) calendar days in total and will notify the Court of any extensions. Defendants agree to use their best efforts to divest the Optical Systems Divestiture Assets as expeditiously as possible.

B.    Defendants promptly must make known, by usual and customary means, the availability of the Optical Systems Divestiture Assets. Defendants must inform any person making an inquiry regarding a possible purchase of the Optical Systems Divestiture Assets that

the Optical Systems Divestiture Assets are being divested in accordance with this Final Judgment and must provide that person with a copy of this Final Judgment. Defendants must offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Optical Systems Divestiture Assets customarily provided in a due-diligence process; provided, however, that Defendants need not provide information or documents subject to the attorney-client privilege or work-product doctrine. Defendants must make this information available to the United States at the same time that the information is made available to any other person.

  C. Defendants must cooperate with and assist the Acquirer of the Optical Systems Divestiture Assets in identifying and hiring all Optical Systems Personnel, including:

    1. Within ten (10) business days following receipt of a request by the Acquirer of the Optical Systems Divestiture Assets or the United States, Defendants must identify all Optical Systems Personnel to the Acquirer of the Optical Systems Divestiture Assets and the United States, including by providing organization charts covering all Optical Systems Personnel.

    2. Within ten (10) business days following receipt of a request by the Acquirer of the Optical Systems Divestiture Assets or the United States, Defendants must provide to the Acquirer of the Optical Systems Divestiture Assets the information set forth in Paragraph VI(C)(1), and to the Acquirer of the Optical Systems Divestiture Assets and the United States the following additional information related to Optical Systems Personnel: name; job title; current salary and benefits including most recent bonus paid, aggregate annual compensation, current target or guaranteed bonus, if any, and any other payments due to or promises made to the employee; descriptions of reporting relationships, past experience, responsibilities, and training

and educational histories; lists of all certifications; and all job performance evaluations. If Defendants are barred by any applicable laws from providing any of this information, within ten (10) business days following receipt of the request, Defendants must provide the requested information to the full extent permitted by law and also must provide a written explanation of Defendants' inability to provide the remaining information.

       3.    At the request of the Acquirer of the Optical Systems Divestiture Assets, Defendants must promptly make Optical Systems Personnel available for private interviews with the Acquirer of the Optical Systems Divestiture Assets during normal business hours at a mutually agreeable location.

       4.    Defendants must not interfere with any efforts by the Acquirer of the Optical Systems Divestiture Assets to employ any Optical Systems Personnel. Interference includes but is not limited to offering to increase the salary or improve the benefits of Optical Systems Personnel unless the offer is part of a company-wide increase in salary or benefits that was announced prior to June 9, 2019 or has been approved by the United States, in its sole discretion. Defendants' obligations under this paragraph will expire six (6) months after the divestiture of the Optical Systems Divestiture Assets pursuant to this Final Judgment.

       5.    For Optical Systems Personnel who elect employment with the Acquirer of the Optical Systems Divestiture Assets within six (6) months of the date on which the Optical Systems Divestiture Assets are divested to the Acquirer of the Optical Systems Divestiture Assets, Defendants must waive all non-compete and non-disclosure agreements, vest all unvested pension and other equity rights, and provide all benefits that those Optical Systems Personnel otherwise would have been provided had the Optical Systems Personnel continued

employment with Defendants, including but not limited to any retention bonuses or payments. Defendants may maintain reasonable restrictions on disclosure by Optical Systems Personnel of Defendants' proprietary non-public information that is unrelated to Optical Systems Divestiture Assets and not otherwise required to be disclosed by this Final Judgment.

6.      For a period of twelve (12) months from the date on which the Optical Systems Divestiture Assets are divested to the Acquirer of the Optical Systems Divestiture Assets, Defendants may not solicit to rehire Optical Systems Personnel who were hired by the Acquirer of the Optical Systems Divestiture Assets within six (6) months of the date on which the Optical Systems Divestiture Assets are divested to the Acquirer of the Optical Systems Divestiture Assets unless (a) an individual is terminated or laid off by the Acquirer of the Optical Systems Divestiture Assets or (b) the Acquirer of the Optical Systems Divestiture Assets agrees in writing that Defendants may solicit to rehire that individual.  Nothing in this paragraph prohibits Defendants from advertising employment openings using general solicitations or advertisements.

D.      Defendants must permit prospective Acquirers of the Optical Systems Divestiture Assets to have reasonable access to make inspections of the physical facilities and access to all environmental, zoning, and other permit documents and information, and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

E.      Defendants must warrant to the Acquirer of the Optical Systems Divestiture Assets that each asset to be divested will be fully operational and without material defect on the date of sale.

F.      Defendants must not take any action that will impede in any way the permitting, operation, or divestiture of the Optical Systems Divestiture Assets.

G.      Defendants must make best efforts to assign, subcontract, or otherwise transfer all contracts related to the Optical Systems Divestiture Assets, including all supply and sales contracts, to the Acquirer of the Optical Systems Divestiture Assets. Defendants must not interfere with any negotiations between the Acquirer of the Optical Systems Divestiture Assets and a contracting party.

H.      At the option of the Acquirer of the Optical Systems Divestiture Assets, and subject to approval by the United States in its sole discretion, on or before the date on which the Optical Systems Divestiture Assets are divested to Acquirer of the Optical Systems Divestiture Assets, Defendants must enter into a supply contract to meet the needs of the Acquirer of the Optical Systems Divestiture Assets for image processing software to support projects of the Optical Systems Business for a period of up to twelve (12) months on terms and conditions reasonably related to market conditions for image processing software. The United States, in its sole discretion, may approve one or more extensions of this supply contract, for a total of up to an additional twelve (12) months. If the Acquirer of the Optical Systems Divestiture Assets seeks an extension of the term of this supply contract, Defendants must notify the United States in writing at least three (3) months prior to the date the supply contract expires. The Acquirer of the Optical Systems Divestiture Assets may terminate the supply contract without cost or penalty at any time upon commercially reasonable notice.

I.      At the option of the Acquirer of the Optical Systems Divestiture Assets, and subject to approval by the United States in its sole discretion, on or before the date on which the

Optical Systems Divestiture Assets are divested to the Acquirer of the Optical Systems Divestiture Assets, Defendants must enter into a contract to provide transition services for back office, human resource, and information technology services and support for the Optical Systems Business for a period of up to twelve (12) months on terms and conditions reasonably related to market conditions for the provision of the transition services. The United States, in its sole discretion, may approve one or more extensions of this contract for transition services, for a total of up to an additional six (6) months. If the Acquirer of the Optical Systems Divestiture Assets seeks an extension of the term of this contract for transition services, Defendants must notify the United States in writing at least three (3) months prior to the date the contract expires. The Acquirer of the Optical Systems Divestiture Assets may terminate a contract for transition services without cost or penalty at any time upon commercially reasonable notice. The employee(s) of Defendants tasked with providing these transition services must not share any competitively sensitive information of the Acquirer of the Optical Systems Divestiture Assets with any other employee of Defendants.

J.     Defendants must warrant to the Acquirer of the Optical Systems Divestiture Assets that there are no material defects in the environmental, zoning, or other permits pertaining to the operation of the Optical Systems Divestiture Assets. Following the sale of the Optical Systems Divestiture Assets, Defendants must not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Optical Systems Divestiture Assets.

K.     Unless the United States otherwise consents in writing, the divestiture pursuant to Section VI or by a Divestiture Trustee appointed pursuant to Section VII of this Final Judgment

34

must include the entire Optical Systems Divestiture Assets and must be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Optical Systems Divestiture Assets can and will be used by the Acquirer of the Optical Systems Divestiture Assets as part of a viable, ongoing business in the design, development, production, and sale of Optical Systems, and will remedy the competitive harm alleged in the Complaint.  The divestiture, whether pursuant to Section VI or Section VII of this Final Judgment:

> (1)   must be made to an Acquirer that, in the United States' sole judgment, has the intent and capability (including the necessary managerial, operational, technical, and financial capability) of competing effectively in the business of the design, development, production, and sale of Optical Systems; and

> (2)   must be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between an Acquirer and Defendants give Defendants the ability unreasonably to raise the Acquirer of the Optical Systems Divestiture Assets' costs, to lower the Acquirer of the Optical Systems Divestiture Assets' efficiency, or otherwise to interfere in the ability of the Acquirer of the Optical Systems Divestiture Assets to compete effectively.

L.     If any term of an agreement between Defendants and the Acquirer of the Optical Systems Divestiture Assets to effectuate the divestiture required by this Final Judgment varies from a term of this Final Judgment then, to the extent that Defendants cannot fully comply with both, this Final Judgment determines Defendants' obligations.

## VII.    APPOINTMENT OF DIVESTITURE TRUSTEE

A.     If Defendants have not divested all of the Divestiture Assets within the periods specified in Paragraphs IV(A), V(A) and VI(A), Defendants must immediately notify the United States of that fact in writing. Upon application of the United States, the Court will appoint a Divestiture Trustee selected by the United States and approved by the Court to effect the

divestiture(s) of any of the Divestiture Assets that have not been sold during the time periods specified in Paragraphs IV(A), V(A) and VI(A).

B.      After the appointment of a Divestiture Trustee by the Court, only the Divestiture Trustee will have the right to sell those Divestiture Assets that the Divestiture Trustee has been appointed to sell. The Divestiture Trustee will have the power and authority to accomplish the divestiture(s) to an Acquirer(s) acceptable to the United States, in its sole discretion, at a price and on terms as are then obtainable upon reasonable effort by the Divestiture Trustee, subject to the provisions of Sections IV, V, VI, VII, and VIII of this Final Judgment, and will have other powers as the Court deems appropriate. Subject to Paragraph VII(D) of this Final Judgment, the Divestiture Trustee may hire at the cost and expense of Defendants any agents or consultants, including, but not limited to, investment bankers, attorneys, and accountants, who will be solely accountable to the Divestiture Trustee, reasonably necessary in the Divestiture Trustee's judgment to assist in the divestiture. Any such agents or consultants will serve on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications.

C.      Defendants may not object to a sale by the Divestiture Trustee on any ground other than malfeasance by the Divestiture Trustee. Objections by Defendants must be conveyed in writing to the United States and the Divestiture Trustee within ten (10) calendar days after the Divestiture Trustee has provided the notice required under Section VIII.

D.      The Divestiture Trustee will serve at the cost and expense of Defendants pursuant to a written agreement, on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications. The Divestiture Trustee will

account for all monies derived from the sale of the assets sold by the Divestiture Trustee and all

costs and expenses so incurred. After approval by the Court of the Divestiture Trustee's

accounting, including fees for any of its services yet unpaid and those of agents and consultants

retained by the Divestiture Trustee, all remaining money will be paid to Defendants and the trust

will then be terminated. The compensation of the Divestiture Trustee and any agents or

consultants retained by the Divestiture Trustee must be reasonable in light of the value of the

Divestiture Assets and based on a fee arrangement that provides the Divestiture Trustee with

incentives based on the price and terms of the divestiture and the speed with which it is

accomplished, but the timeliness of the divestiture is paramount. If the Divestiture Trustee and

Defendants are unable to reach agreement on the Divestiture Trustee's or any agents' or

consultants' compensation or other terms and conditions of engagement within fourteen (14)

calendar days of the appointment of the Divestiture Trustee, the United States may, in its sole

discretion, take appropriate action, including making a recommendation to the Court. Within

three (3) business days of hiring any agent or consultant, the Divestiture Trustee must provide

written notice of the hiring and rate of compensation to Defendants and the United States.

       E.      Defendants must use their best efforts to assist the Divestiture Trustee in

accomplishing the required divestiture(s). The Divestiture Trustee and any agents or consultants

retained by the Divestiture Trustee must have full and complete access to the personnel, books,

records, and facilities of the business to be divested, and Defendants must provide or develop

financial and other information relevant to such business as the Divestiture Trustee may

reasonably request, subject to reasonable protection for trade secrets; other confidential research,

development, or commercial information; or any applicable privileges. Defendants may not take

any action to interfere with or to impede the Divestiture Trustee's accomplishment of the divestiture(s).

F.      After appointment, the Divestiture Trustee will file monthly reports with the United States setting forth the Divestiture Trustee's efforts to accomplish the divestiture(s) ordered by this Final Judgment. Reports must include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring any interest in the Divestiture Assets and will describe in detail each contact with any such person. The Divestiture Trustee will maintain full records of all efforts made to divest the Divestiture Assets.

G.      If the Divestiture Trustee has not accomplished the divestiture(s) ordered by this Final Judgment within six months of appointment, the Divestiture Trustee must promptly file with the Court a report setting forth: (1) the Divestiture Trustee's efforts to accomplish the required divestiture(s); (2) the reasons, in the Divestiture Trustee's judgment, why the required divestiture(s) has not been accomplished; and (3) the Divestiture Trustee's recommendations. To the extent such report contains information that the Divestiture Trustee deems confidential, such report will not be filed in the public docket of the Court. The Divestiture Trustee will at the same time furnish such report to the United States, which will have the right to make additional recommendations to the Court consistent with the purpose of the trust. The Court thereafter may enter such orders as it deems appropriate to carry out the purpose of this Final Judgment, which, if necessary, may include extending the trust and the term of the Divestiture Trustee's appointment by a period requested by the United States.

H.      If the United States determines that the Divestiture Trustee is not acting diligently or in a reasonably cost-effective manner, the United States may recommend that the Court appoint a substitute Divestiture Trustee.

## VIII.    NOTICE OF PROPOSED DIVESTITURE

A.      Within two (2) business days following execution of a definitive divestiture agreement, Defendants or the Divestiture Trustee, whichever is then responsible for effecting the divestiture required herein, must notify the United States of a proposed divestiture required by this Final Judgment. If the Divestiture Trustee is responsible for effecting the divestiture, the Divestiture Trustee also must notify Defendants. The notice must set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B.      Within fifteen (15) calendar days of receipt by the United States of this notice, the United States may request from Defendants, the proposed Acquirer(s), other third parties, or the Divestiture Trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirer and other prospective Acquirer(s). Defendants and the Divestiture Trustee must furnish the additional information requested within fifteen (15) calendar days of the receipt of the request, unless the United States provides written agreement to a different period.

C.      Within forty-five (45) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from Defendants, the proposed Acquirer(s), other third parties, and the Divestiture Trustee, whichever is later, the United States must provide written notice to Defendants and the

Divestiture Trustee, if there is one, stating whether or not the United States, in its sole discretion, objects to the proposed Acquirer(s) or any other aspect of the proposed divestiture.  If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to Defendants' limited right to object to the sale under Paragraph VII(C) of this Final Judgment.  Absent written notice that the United States does not object or upon objection by the United States, a divestiture may not be consummated.  Upon objection by Defendants pursuant to Paragraph VII(C), a divestiture by the Divestiture Trustee may not be consummated unless approved by the Court.

D.      No information or documents obtained pursuant to Section VIII may be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand-jury proceedings), for the purpose of evaluating a proposed Acquirer or securing compliance with this Final Judgment, or as otherwise required by law.

E.      In the event of a request by a third party for disclosure of information under the Freedom of Information Act, 5 U.S.C. § 552, the Antitrust Division will act in accordance with that statute, and the Department of Justice regulations at 28 C.F.R. part 16, including the provision on confidential commercial information, at 28 C.F.R. § 16.7.  Persons submitting information to the Antitrust Division should designate the confidential commercial information portions of all applicable documents and information under 28 C.F.R. § 16.7.  Designations of confidentiality expire ten years after submission, "unless the submitter requests and provides justification for a longer designation period."  *See* 28 C.F.R. § 16.7(b).

40

F.      If at the time a person furnishes information or documents to the United States pursuant to Section VIII, that person represents and identifies in writing information or documents for which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," the United States must give that person ten calendar days' notice before divulging the material in any legal proceeding (other than a grand-jury proceeding).

## IX.     FINANCING

Defendants may not finance all or any part of Acquirer's purchase of all or part of the Divestiture Assets made pursuant to this Final Judgment.

## X.     ASSET PRESERVATION AND HOLD SEPARATE

Until the divestiture required by this Final Judgment has been accomplished, Defendants must take all steps necessary to comply with the Asset Preservation and Hold Separate Stipulation and Order entered by the Court. Defendants will take no action that would jeopardize the divestiture ordered by the Court.

## XI.     AFFIDAVITS

A.      Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestiture required by this Final Judgment has been completed, Defendants must deliver to the United States an affidavit, signed by each Defendant's Chief Financial Officer and General Counsel, describing the fact and manner of Defendants' compliance with this Final Judgment. Each affidavit must include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar

days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, an interest in the Divestiture Assets, and must describe in detail each contact with such persons during that period. Each affidavit also must include a description of the efforts Defendants have taken to solicit buyers for and complete the sale of the Divestiture Assets, and to provide required information to prospective Acquirers. Each affidavit also must include a description of any limitations placed by Defendants on information provided to prospective Acquirers. If the information set forth in the affidavit is true and complete, objection by the United States to information provided by Defendants to prospective Acquirers must be made within fourteen (14) calendar days of receipt of the affidavit.

B.      Within twenty (20) calendar days of the filing of the Complaint in this matter, Defendants must deliver to the United States an affidavit that describes in reasonable detail all actions Defendants have taken and all steps Defendants have implemented on an ongoing basis to comply with Section X of this Final Judgment. Defendants must deliver to the United States an affidavit describing any changes to the efforts and actions outlined in Defendants' earlier affidavits filed pursuant to Section XI within fifteen (15) calendar days after the change is implemented.

C.      Defendants must keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after the divestiture has been completed.

## XII.     APPOINTMENT OF MONITORING TRUSTEE

A.      Upon application of the United States, the Court will appoint a Monitoring Trustee selected by the United States and approved by the Court.

B.      The Monitoring Trustee will have the power and authority to monitor Defendants'

compliance with the terms of this Final Judgment and the Asset Preservation and Hold Separate

Stipulation and Order entered by the Court, and will have other powers as the Court deems

appropriate. The Monitoring Trustee will be required to investigate and report on Defendants'

compliance with this Final Judgment and the Asset Preservation and Hold Separate Stipulation

and Order, and Defendants' progress toward effectuating the purposes of this Final Judgment,

including but not limited to: Defendants' sale of the Divestiture Assets and Defendants'

compliance with the terms of the transition services agreements, supply contracts, laboratory

access arrangements, and short-term leases provided for in this Final Judgment.

C.      Subject to Paragraph XII(E) of this Final Judgment, the Monitoring Trustee may

hire at the cost and expense of Defendants any agents and consultants, including, but not limited

to, investment bankers, attorneys, and accountants, who will be solely accountable to the

Monitoring Trustee, reasonably necessary in the Monitoring Trustee's judgment. Any such

agents or consultants will serve on such terms and conditions as the United States approves,

including confidentiality requirements and conflict of interest certifications.

D.      Defendants may not object to actions taken by the Monitoring Trustee in

fulfillment of the Monitoring Trustee's responsibilities under any Order of the Court on any

ground other than malfeasance by the Monitoring Trustee. Objections by Defendants must be

conveyed in writing to the United States and the Monitoring Trustee within ten (10) calendar

days after the action taken by the Monitoring Trustee giving rise to Defendants' objection.

E.      The Monitoring Trustee will serve at the cost and expense of Defendants pursuant

to a written agreement with Defendants, on such terms and conditions as the United States

approves, including confidentiality requirements and conflict of interest certifications. The compensation of the Monitoring Trustee and any agents or consultants retained by the Monitoring Trustee must be on reasonable and customary terms commensurate with the individuals' experience and responsibilities. If the Monitoring Trustee and Defendants are unable to reach agreement on the Monitoring Trustee's or any agents' or consultants' compensation or other terms and conditions of engagement within fourteen (14) calendar days of the appointment of the Monitoring Trustee, the United States may, in its sole discretion, take appropriate action, including making a recommendation to the Court. Within three (3) business days of hiring any agents or consultants, the Monitoring Trustee must provide written notice of the hiring and rate of compensation to Defendants and the United States.

F.     The Monitoring Trustee will have no responsibility or obligation for the operation of Defendants' businesses.

G.     Defendants must use their best efforts to assist the Monitoring Trustee in monitoring Defendants' compliance with their individual obligations under this Final Judgment and under the Asset Preservation and Hold Separate Stipulation and Order. The Monitoring Trustee and any agents or consultants retained by the Monitoring Trustee must have full and complete access to the personnel, books, records, and facilities relating to compliance with this Final Judgment, subject to reasonable protection for trade secrets; other confidential research, development, or commercial information; or any applicable privileges. Defendants may not take any action to interfere with or to impede the Monitoring Trustee's accomplishment of the Monitoring Trustee's responsibilities.

44

H.      After appointment, the Monitoring Trustee will file reports monthly, or more frequently as needed, with the United States setting forth Defendants' efforts to comply with Defendants' obligations under this Final Judgment and under the Asset Preservation and Hold Separate Stipulation and Order.

I.      The Monitoring Trustee will serve until the divestiture of all the Divestiture Assets is finalized pursuant to this Final Judgment, or until the term of any transition services agreements, supply contracts, laboratory access arrangements, and short-term leases required by this Final Judgment have expired, whichever is later.

J.      If the United States determines that the Monitoring Trustee is not acting diligently or in a reasonably cost-effective manner, the United States may recommend that the Court appoint a substitute Monitoring Trustee.

### XIII.    COMPLIANCE INSPECTION

A.      For the purposes of determining or securing compliance with this Final Judgment, or of related orders such as an Asset Preservation and Hold Separate Stipulation and Order, or of determining whether this Final Judgment should be modified or vacated, and subject to any legally-recognized privilege, from time to time authorized representatives of the United States, including agents retained by the United States, must, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division and reasonable notice to Defendants, be permitted:

> (1)     access during Defendants' office hours to inspect and copy or, at the option of the United States, to require Defendants to provide electronic copies of all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants relating to any matters contained in this Final Judgment; and

      (2)     to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews must be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B.      Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants must submit written reports or respond to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment.

C.      No information or documents obtained pursuant to Section XIII may be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.      In the event of a request by a third party for disclosure of information under the Freedom of Information Act, 5 U.S.C. § 552, the Antitrust Division will act in accordance with that statute, and the Department of Justice regulations at 28 C.F.R. part 16, including the provision on confidential commercial information, at 28 C.F.R. § 16.7. Defendants submitting information to the Antitrust Division should designate the confidential commercial information portions of all applicable documents and information under 28 C.F.R. § 16.7. Designations of confidentiality expire ten years after submission, "unless the submitter requests and provides justification for a longer designation period." *See* 28 C.F.R. § 16.7(b).

E.      If at the time that Defendants furnish information or documents to the United States pursuant to Section XIII, Defendants represent and identify in writing information or

documents for which a claim of protection may be asserted under Rule 26(c)(1)(G) of the

Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material,

"Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure,"

the United States must give Defendants ten (10) calendar days' notice before divulging the

material in any legal proceeding (other than a grand jury proceeding).

## XIV.   LIMITATIONS ON REACQUISITION

Defendants may not reacquire any part of or any interest in the Divestiture Assets during

the term of this Final Judgment.

## XV.   RETENTION OF JURISDICTION

The Court retains jurisdiction to enable any party to this Final Judgment to apply to the

Court at any time for further orders and directions as may be necessary or appropriate to carry

out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and

to punish violations of its provisions.

## XVI.   ENFORCEMENT OF FINAL JUDGMENT

A.      The United States retains and reserves all rights to enforce the provisions of this

Final Judgment, including the right to seek an order of contempt from the Court. Defendants

agree that in a civil contempt action, a motion to show cause, or a similar action brought by the

United States regarding an alleged violation of this Final Judgment, the United States may

establish a violation of this Final Judgment and the appropriateness of a remedy therefor by a

preponderance of the evidence, and Defendants waive any argument that a different standard of

proof should apply.

47

B.    This Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore the competition the United States alleged was harmed by the challenged conduct.  Defendants agree that they may be held in contempt of, and that the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face.  In any such interpretation, the terms of this Final Judgment should not be construed against either party as the drafter.

C.    In an enforcement proceeding in which the Court finds that Defendants have violated this Final Judgment, the United States may apply to the Court for a one-time extension of this Final Judgment, together with other relief that may be appropriate.  In connection with a successful effort by the United States to enforce this Final Judgment against a Defendant, whether litigated or resolved before litigation, that Defendant agrees to reimburse the United States for the fees and expenses of its attorneys, as well as all other costs, including experts' fees, incurred in connection with that enforcement effort, including in the investigation of the potential violation.

D.    For a period of four (4) years following the expiration of this Final Judgment, if the United States has evidence that a Defendant violated this Final Judgment before it expired, the United States may file an action against that Defendant in this Court requesting that the Court order: (1) Defendant to comply with the terms of this Final Judgment for an additional term of at least four years following the filing of the enforcement action; (2) all appropriate contempt

remedies; (3) additional relief needed to ensure the Defendant complies with the terms of this Final Judgment, and (4) fees or expenses as called for by Section XII.

## XVII.  EXPIRATION OF FINAL JUDGMENT

Unless the Court grants an extension, this Final Judgment will expire ten (10) years from the date of its entry, except that after five (5) years from the date of its entry, this Final Judgment may be terminated upon notice by the United States to the Court and Defendants that the divestitures have been completed and the continuation of this Final Judgment no longer is necessary or in the public interest.

## XVIII.  PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including by making available to the public copies of this Final Judgment, the Competitive Impact Statement, comments thereon, and the United States' responses to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and responses to comments filed with the Court, entry of this Final Judgment is in the public interest.


Date: July 22, 2020


_____

United States District Judge